UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AZMY ABDELRAAUF EL-GHAZALY,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>Respondents. | No. 1:25-cv-01621-DC-CKD (HC)<br><br>ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>(Doc. No. 2) |

This matter is before the court on Petitioner's motion for a temporary restraining order (Doc. No. 2), which Petitioner concurrently filed with a petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) For the reasons explained below, the court will grant Petitioner's motion for a temporary restraining order.

**BACKGROUND**

**A.    Factual Background**

Petitioner is stateless Palestinian.[1] (Doc. No. 1 at ¶ 18.) Petitioner was born in the Gaza Strip in 1966, before moving to Saudi Arabia as an infant. (*Id.* at ¶¶ 18–19.)

---

[1] Petitioner's immigration records indicate that he is a citizen of Jordan, (Doc. No. 6-3 at 1), though Respondents in their opposition do not otherwise dispute that Petitioner is a stateless individual with a final removal order to Saudi Arabia. (Doc. No. 6 at 2.)

1

1    Petitioner entered the United States on June 25, 1990, on a tourist visa, using an Egyptian
2    travel document. (*Id.* at ¶ 20.) Petitioner applied for asylum, and his asylum application was
3    denied. (*Id.*) On October 8, 1997, Petitioner was granted voluntary departure by an Immigration
4    Judge. (*Id.*) However, when Petitioner failed to self-deport, an alternative order of removal to
5    Saudi Arabia went into effect. (*Id.*) Petitioner appealed that final order of removal to the Board of
6    Immigration of Appeals (BIA), but the appeal was dismissed in 1999. (*Id.*) As of the date of this
7    order, Petitioner's final order of removal from 1997 is still in effect. (*Id.*)

   Petitioner was taken into custody by the U.S. Immigration and Naturalization Service
("INS")[2] on April 18, 2002.[3] (*Id.* at ¶ 22.) On July 27, 2002, Petitioner filed a petition for writ of
habeas corpus in the U.S. District Court for the Northern District of California, seeking release
from immigration detention. (*Id.* at ¶ 23.) Petitioner was released shortly thereafter on August 23,
2002, and placed on an Order of Supervision ("OSUP"). (*Id.* at ¶ 25.)

   Petitioner is married to a United States citizen. (*Id.* at ¶ 27.) Petitioner's spouse filed a
Form I-130, Petition for Alien Relative on Petitioner's behalf. (*Id.*) The petition was approved on
February 25, 2015. (*Id.*) Petitioner filed a motion to reopen his removal proceedings to adjust his
status to "that of a lawful permanent resident based on his approved petition and to reapply for
asylum on the basis of worsening country conditions in Gaza." (*Id.*) It is not clear from the
petition whether the motion to reopen was filed in 2003 or 2023, as both dates are referenced. (*Id.*
at ¶¶ 27, 28.) In any event, that motion was denied on October 20, 2025. (*Id.* at ¶ 28.)

   On October 14, 2025, Petitioner appeared at the U.S. Immigration and Customs
Enforcement (ICE) office in Dallas, Texas for a routine appointment. (*Id.*) He was then taken into

---

[2] As stated by Petitioner, "[t]he INS dissolved in March 2003 pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. Its functions were transferred to the newly created Department of Homeland Security (DHS), with immigration-related responsibilities divided primarily among U.S. Citizenship and Immigration Services (USCIS), Immigration and Customs Enforcement (ICE), and Customs and Border Protection (CBP)." (Doc. No. 1 at 7–8 n.2.)

[3] Petitioner was taken into immigration custody following his release on bail in a criminal case. (Doc. No. 1 at ¶ 21.) However, the criminal case against Petitioner was dismissed, and he does not have any criminal convictions. (*Id.*)

2

1  custody and transferred to the California City Detention Facility in California City, California,
2  where he is currently detained. (*Id.* at ¶¶ 28, 13.)
3      Petitioner then filed an emergency motion for a stay of deportation with the BIA. (*Id.* at
4  ¶ 28.) Petitioner alleges that rather than rule on his motion for a stay, on October 20, 2025, the
5  BIA ordered him removed from the United States. (*Id.*)

**B.    Procedural Background**

    On November 21, 2025, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) In his petition, Petitioner brings the following claims: (1) violation of his due process rights under the Fifth Amendment to the Constitution based on his re-detention; (2) violation of his due process rights under the Fifth Amendment based on inadequate third country removal procedures; (3) violation of the applicable regulations, including 8 C.F.R. §§ 241.13(i)(2)–(3); and (4) violation of his due process rights under the Fifth Amendment based on his indefinite detention.[4]

    Also on November 21, 2025, Petitioner filed the pending motion for a temporary restraining order. (Doc. No. 2.) In his motion, Petitioner seeks immediate release from immigration detention and an order preventing his re-detainment unless and until he is afforded a hearing before a neutral adjudicator. (Doc. No. 2 at 2.) Petitioner also seeks to enjoin Respondents from removing him to any third country besides Saudi Arabia, the country that is already stated in his removal order.[5] (*Id.*) Respondents filed their opposition to Petitioner's motion on November 26, 2025. (Doc. No. 6.) Petitioner filed a reply thereto on November 28, 2025. (Doc. No. 7.)

/////

---

[4] Petitioner asserts a fifth claim, but it appears to be identical to his second claim. (Doc. No. 1 at 23, 26–27.)

[5] Respondents argue in opposition that Petitioner's claim is not ripe because ICE seeks to remove Petitioner to Saudi Arabia, consistent with the final order of removal. (Doc. No. 6 at 6.) Though the court recognizes Petitioner's concerns regarding third country removal, the third country removal issue is not presently before the court in this case, and therefore the issuance of an injunction as to third country removal procedures is not warranted at this time.

**LEGAL STANDARD**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20 (2008). A plaintiff seeking a temporary restraining order bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 745 F.Supp.3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F.Supp.3d 1177, 1185 (C.D. Cal. 2015).

**ANALYSIS**

**A.      Likelihood of Success on the Merits**

1.      <u>Statutory Framework</u>

Except in limited circumstances, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days ( . . . referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A).

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

>  (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Here, there is no suggestion by Respondents that Petitioner's removal order became final recently such that Petitioner's removal period is presently ongoing. Rather, the record suggests Petitioner's removal order was considered final as early as 1999, when the BIA dismissed Petitioner's appeal of his removal order. (Doc. No. 1 at ¶ 20; 6 at 2.) Further, "[i]n general, [d]uring the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2)(A). Where "an alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision . . . ." 8 U.S.C. 1231(a)(3); *see also Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) ("As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention."). Here, Petitioner was detained on April 18, 2002, and released on August 23, 2002, subject to OSUP conditions. (Doc. No. 1 at ¶¶ 22, 25.) As a result, Petitioner is no longer subject to detention under § 1231(a)(2). The court therefore considers whether Petitioner's re-detention in October 2025 is lawful under other statutory or regulatory provisions.

### 2. Lawfulness of Petitioner's Re-detention

"Noncitizens subject to a final removal order may be released pursuant to 8 C.F.R. § 241.4(l) or 8 C.F.R. § 241.13." *Khamba v. Albarran*, No. 1:25-cv-01227-JLT-SKO, 2025 WL 2959276, at *7 (E.D. Cal. Oct. 17, 2025) (citation omitted). These regulations also govern the revocation of a noncitizen's release from custody. *See id.* Respondents indicate that here, Petitioner's "OSUP was revoked under 8 C.F.R. § 241.13(i) for the purpose of effectuating his removal to Saudi Arabia." (Doc. No. 6-1 at ¶ 11.)

Under 8 C.F.R. § 241.13(i)(2), ICE is authorized to revoke a noncitizen's release for purposes of removal. Specifically, a noncitizen's release may be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon such a determination:

5

> [T]he alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3). Further, the revocation of a noncitizen's supervised release based on a finding of changed circumstances is reviewed in light of the factors set out in 8 C.F.R. § 241.13(f), which "instruct[] ICE on how it should make such a determination." *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. 2025) (quoting *Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023)). The § 241.13(f) factors include but are not limited to:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.

8 C.F.R. § 241.13(f).

Government agencies are required to follow their own regulations. *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003); *see also Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993) ("[W]hen a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and [the government] fails to adhere to it, the challenged deportation proceeding is invalid."). In analyzing whether DHS followed the applicable regulations in detaining a noncitizen, other courts have found that "DHS's failure to follow its own procedural regulations may constitute a due process violation." *Diaz v. Wofford*, No. 1:25-cv-01079-JLT-EPG, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025) (citing *Zhu v. Genalo*, No. 1:25-cv-06523-JLR, 2025 WL 2452352, at *9 (S.D.N.Y. Aug. 26, 2025) ("The Government has significant discretion to enforce the immigration laws and, indeed, to revoke Petitioner's Order of Supervision . . . [b]ut it must do so consistent with the requirements of its own regulations and the

1    Due Process Clause.")).

2           Here, Petitioner has demonstrated he is likely to succeed on his claim that ICE did not
3    comply with the applicable regulations under 8 C.F.R. § 241.13(i) when revoking Petitioner's
4    release. First, to revoke a removable noncitizen's release under § 241.13(i)(2), ICE must
5    determine that "on account of changed circumstances," the noncitizen is likely to be removed in
6    the foreseeable future. 8 C.F.R. § 241.13(i)(2). Respondents assert that Petitioner's OSUP was
7    revoked "for the purpose of effectuating his removal to Saudi Arabia." (Doc. Nos. 6 at 2; 6-1 at
8    ¶ 11.) Respondents further aver that ICE is actively pursuing the issuance of a travel document
9    from Saudi Arabia. (Doc. Nos. 6 at 3; 6-1 at ¶ 13.) In contrast, Petitioner states that since he was
10   re-detained, he has not "been requested to sign any applications for travel documents to Saudi
11   Arabia." (Doc. No. 7 at 2.) Further, Petitioner asserts he is stateless, and that Saudia Arabia has
12   previously declined to accept him. (*Id.* at 3.) The limited record before the court does not show
13   that a changed circumstances determination was made at or before the Petitioner's re-detention on
14   October 14, 2025. Even if ICE assessed the likelihood of Petitioner's removal before revoking his
15   release, the re-detention could not have been "on account of" changed circumstances, given that
16   Respondents concede that no travel document for Petitioner has been obtained, nor have
17   Respondents provided any information as to whether a travel document has been requested. *See*
18   *Duong v. Charles*, No. 1:25-cv-01375-SKO, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025)
19   (finding no evidence of changed circumstances where the government "did not even submit a
20   request to Vietnam for travel documents" until a month after re-detaining petitioner); *Sphabmixay*
21   *v. Noem*, No. 25-cv-2648-LL-VET, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025) (finding
22   no evidence of changed circumstances where the government "did not even submit a request to
23   Laos for travel documents" until a week after re-detaining petitioner). Petitioner has shown that
24   ICE likely violated its own rule under § 241.13(i)(2), given the lack of any evidence of a
25   determination of changed circumstances to justify the revocation of Petitioner's
26   /////
27   /////
28   /////

release.[6]

Second, even if ICE made a legally sufficient determination that changed circumstances existed or that Petitioner had violated the OSUP, ICE also likely violated § 241.13(i)(3)'s notice requirement. Petitioner asserts he did not receive a formal "Notice of Revocation of Release" document to inform him of the reasons why he was re-detained, nor has he received one since he has been in custody. (Doc. Nos. 2 at 14; 7 at 6.) While Respondents provide some documents concerning Petitioner's immigration status, they do not provide any documentation that Petitioner was provided with a formal Notice of Revocation of Release, nor evidence that he was told of any specifics regarding a changed circumstances determination or that he violated his OSUP. *Cf. J.R.M.J. v. Wofford*, No. 1:25-cv-01567-DC-SCR, 2025 WL 3295593, at *5 (E.D. Cal. Nov. 26, 2025) (finding that petitioner had not shown ICE failed to comply with the requirement to inform petitioner of the reasons for revocation where respondents served a formal notice of revocation on petitioner, which included a detailed explanation for revocation was signed and dated by petitioner). Instead, Respondents assert, in conclusory fashion, that once Petitioner was in custody, he was notified that "his OSUP was revoked . . . for the purpose of effectuating his removal to Saudi Arabia." (Doc. No. 6 at 4; 6-1 at ¶ 11.) However, a "[p]etitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition." *Phakeokoth v. Noem*, No. 3:25-cv-02817-RBM-SBC, 2025 WL 3124341, at *4 (S.D. Cal. Nov. 7, 2025) (quoting *Sarail A. v. Bondi*, No. 25-cv-2144-ECT-JFD, 2025 WL 2533673, at *10 (D. Minn. Sept. 3, 2025)). Thus, even if an informal interview occurred, Petitioner could not have had a meaningful opportunity to respond to the reasons for revocation, because on this current record,

---

[6] Further, Respondents argue that Petitioner's "noncompliance on supervision" separately justifies revocation of his release. (Doc. No. 6 at 4.) Though Respondents are correct that 8 C.F.R. § 243.13(i)(1) allows ICE to re-detain a noncitizen who violates the conditions of their release, by Respondents own admission, this was not the reason allegedly provided to Petitioner at the time of his re-detainment, and therefore, cannot serve as the basis for revocation. (Doc. No. 6-1 at ¶ 11) ("Petitioner was notified that his OSUP was revoked under 8 C.F.R. § 241.13(i) for the purpose of effectuating his removal to Saudi Arabia."). Further, Petitioner disputes any noncompliance with his OSUP. (Doc. No. 7-1 at ¶¶ 3–12.)

8

1  they were not adequately given. Indeed, it appears that Petitioner learned for the first time that he
2  allegedly violated his OSUP, which he disputes, from Respondents' opposition to his motion.
3  (Doc. No. 7-1 at ¶¶ 2–9.) Therefore, Petitioner has demonstrated he is likely to succeed on the
4  merits of his claim that ICE violated the applicable regulations when ICE revoked his release
5  pursuant to 8 C.F.R. § 241.13(i).

**B.     Irreparable Harm**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). The Ninth Circuit has also noted that "unlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017).

Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for injunctive relief.

**C.     Balance of the Equities and Public Interest**

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action. *See Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation marks omitted); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the

1  Constitution."). Petitioner has demonstrated that he is likely unlawfully detained in violation of
2  his due process rights and is suffering irreparable harm as a result.

3  On the other hand, the burden on Respondents in releasing Petitioner from detention is
4  minimal. "[T]he only potential injury that the government faces is a 'short delay' in detaining
5  Petitioner[] if it ultimately demonstrates" that detention is necessary to effectuate removal.
6  *Valencia Zapata v. Kaiser*, No. 25-cv-07492-RFL, 2025 WL 2741654, at *13 (N.D. Cal. Sept. 26,
7  2025) (quoting *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *14
8  (N.D. Cal. Sept. 12, 2025)). Respondents cannot reasonably assert that the public and government
9  will be harmed in any legally cognizable sense by being enjoined from violating Petitioner's due
10 process rights, which is the case here. *See Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727
11 (9th Cir. 1983) (finding "the INS cannot reasonably assert that it is harmed in any legally
12 cognizable sense by being enjoined from constitutional violations."). The court finds that the
13 balance of equities and public interest weigh in favor of granting Petitioner's requested injunctive
14 relief. Therefore, all four *Winter* factors weigh in favor of granting Petitioner's motion for a
15 temporary restraining order.

16 **D.    Bond**

17 A district court may grant preliminary injunctive relief "only if the movant gives security
18 in an amount that the court considers proper to pay the costs and damages sustained by any party
19 found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65. "Rule 65(c) invests the
20 district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*,
21 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir.
22 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it
23 concludes there is no realistic likelihood of harm to the defendant from enjoining his or her
24 conduct.'" *Id.*

25 The parties do not address whether the imposition of a security bond is warranted. The
26 court finds that no security bond is required here, given that courts regularly waive a security
27 bond in similar cases and that Respondents have not established the need to impose a security
28 bond in this case. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-

cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

## CONCLUSION

For the reasons explained above:

1. Petitioner's motion for a temporary restraining order (Doc. No. 2) is GRANTED as follows:

   a. Respondents are ORDERED to immediately release Petitioner from Respondents' custody; and

   b. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, strict compliance with the requirements of 8 C.F.R. § 241.13(i);

2. Respondents are ORDERED TO SHOW CAUSE no later than **December 8, 2025**, as to why this court should not issue a preliminary injunction on the same terms as this Order. Petitioner may file a response thereto by no later than **December 12, 2025**. Respondents may file a reply to Petitioner's response by no later than **December 16, 2025**. If the parties agree upon a less demanding briefing schedule, the court will consider the parties' proposal.

IT IS SO ORDERED.

Dated:   **December 4, 2025**

_____
Dena Coggins
United States District Judge

11